PER CURIAM.
Because we remand this cause for clarification of the judgment with respect to the trial court’s instructions for fixing the boundary line between the parties, an at-length discussion of the facts and issues is pretermitted. Suffice it to say that the surveyor’s map (Plaintiff’s Exhibit 1), referenced in the trial court’s final judgment as the guide for fixing the boundary, is self-contradicting and at variance in certain particulars with the undisputed evidence. We will recite only those facts relevant to our judgment of remand.
One of the issues presented is whether the trial court’s judgment “is invalid and unenforceable in that the description of the boundary contained in the judgment is vague and uncertain.” When viewed in the context of the evidence and the trial court’s judgment, this issue implicitly raises the “weight of the evidence” ground for a new trial. This is true because both parties claim only that property that lies on either side of a common line, as was established between their respective predecessors-in-title by a “metes and bounds” deed in February 1926. The grantor of the 1926 deed subdivided his property into various-sized lots, correctly using the exact metes and bounds description as shown in the deed to establish the perimeter of the subdivision, the plat of which was recorded in October 1926. The parties agree that the northern line — a meandering line that runs generally in a southwest/northeast direction — as described in the 1926 deed and as depicted on the 1926 subdivision plat, represents the northern line of the plaintiff’s property (subdivision Lot 6) and the southern line of the defendant’s property (all of which lies immediately north of the subdivision).
The plaintiff/appellee’s survey shows two separate northern boundary lines: one represents the line depicted on the 1926 plat, which is consistent with the earlier 1926 deed; and the second line lies north of the first line and is arrived at by extending the north and south lines on the east and west sides of Lot 6 (the plaintiff’s property), according to the interior measurements shown on the 1926 plat, which obviously *4 conflict with the description in the 1926 deed.
The trial court’s judgment reflects the same self-contradiction: first, it instructs the surveyor to fix the northern boundary of Lot 6, according to the 1926 subdivision plat; then, it directs that the common boundary be fixed according to the north/south lines on either side of Lot 6, which distances extend the northern boundary to a point north of the line depicted on the 1926 plat. Additionally, the appellee’s survey connects the northernmost points on the east and west lines of Lot 6, according to the platted distances, with a straight line that does not parallel the boundary line as shown on the 1926 plat. Thus, the appellant’s challenge of the trial court’s instructions for fixing the boundary is, in essence, a “weight of the evidence” ground, as presented in his post-judgment motion for a new trial. We agree that the judgment is due to be clarified, but we believe that this can be done by the trial judge on remand without this Court’s reversing the judgment and remanding the cause for a new trial.
From our study of the evidence and the documents of record (the surveys, maps, subdivision plats, and deeds), we believe we understand the source of the confusion: Given the accuracy of the description in the 1926 deed, as well as the accuracy of the northern boundary line as depicted on the 1926 survey, the common boundary line between these parties becomes a simple matter of locating, on the ground, the northern line of Lot 6. How, then, did two surveyors, seeking to define the same line, arrive at two materially different results?
The answer lies in the two materially different methods used by the surveyors in conducting their respective surveys. One followed the literal description contained in the 1926 deed. By this method, the survey- or began at the section corner referenced in the deed and then ran north for the prescribed distance of 2100.4 feet to the point of beginning (the northeast corner of the property conveyed in the 1926 deed); he then turned southwest on the prescribed angles and ran for the prescribed distances along the northern boundary of the property, as described in the 1926 deed.
Apparently, the second surveyor followed essentially the same procedure (we say “apparently” because his map depicts the same “1926” line); but then he went further and established the northern line of Lot 6 by using the north/south distances of the east and west lines of Lot 6, as shown on the 1926 subdivision plat (not shown, of course, on the earlier 1926 deed). It is curious, indeed, that this surveyor implicitly acknowledged that the southernmost of the two northern lines shown on his map is identical to the line depicted on the 1926 plat (consistent with the description in the deed), but then insisted that the northernmost line is the accurate boundary between the parties as determined by the distances running north and south on the east and west lines of Lot 6, and as shown on the subdivision plat, which was made and recorded eight months after the recording date of the 1926 deed.
The problem, then, lies not with the legal description in the 1926 deed, nor with the common boundary depicted by the 1926 subdivision plat, but with the plat’s erroneously depicted distances of the north/south lines of the lots (including Lot 6) that project the east/west connecting line as the common line between the parties. This error occurred because the October 1926 survey, following the February 1926 deed, divided the property lying on the east side of the subdivision and north of the section line into five lots, the distances of which totalled 2100.4 feet on the eastern boundary, omitting the width of an east/west street, which is also shown on the plat. The northernmost point, established by the sum of the measurements of the eastern line of these five lots, is a point farther north than the platted northeast corner of the subdivision, farther by a distance equal to the width of the platted street. Thus, the transposition of this error to the measurements of the north/south line of each of the lots shown on the subdivision plat accounts for the error in fixing the northeast corner of Lot 6 at a point north of the true boundary line, as described in the 1926 deed and as shown on the 1926 plat.
*5 It is axiomatic that the appellant, as owner of the property lying north of the common boundary, can not be forced to accede to the error of the appellee’s predecessor-in-title through his subdivision of the property lying south of the common boundary. A landowner can not use his or his predecessor’s error in the subdivision of his own land to increase his holdings at the expense of his adjoining neighbor, with whom he shares a common boundary. While this error may have the effect of reducing the size of the appellee’s lot, as that lot is shown on the subdivision plat (Lot 6), it can only be charged against the appellee’s grantor, not against the appellant, whose southern boundary is fixed by the 1926 deed and is shown by the 1926 plat.
Accordingly, we remand the cause with instructions to the trial court to clarify its judgment by omitting therefrom any reference to the north/south measurements of Lot 6, as contained in the subdivision plat, and by referring solely to the description of the common boundary, as that boundary is described in the 1926 deed and as it is shown on the 1926 subdivision plat.
REMANDED WITH INSTRUCTIONS.
TORBERT, C.J., and MADDOX, JONES, ALMON and HOUSTON, JJ„ concur.
BEATTY, J., dissents.