# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-00156-COA

WILDA ANN MARTIN                                        APPELLANT

v.

TRUSTMARK CORPORATION                                  APPELLEE

DATE OF JUDGMENT:              01/24/2018
TRIAL JUDGE:                   HON. TOMIE T. GREEN
COURT FROM WHICH APPEALED:     HINDS COUNTY CIRCUIT COURT,
                               FIRST JUDICIAL DISTRICT
ATTORNEYS FOR APPELLANT:       MATTHEW THOMPSON
                               GREGORY J. BOSSELER
ATTORNEY FOR APPELLEE:         JAMES D. HOLLAND
NATURE OF THE CASE:            CIVIL - PERSONAL INJURY
DISPOSITION:                   AFFIRMED - 09/10/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

EN BANC.

J. WILSON, P.J., FOR THE COURT:

¶1.    Wilda Ann Martin sued Trustmark Corporation after she tripped over the threshold in the doorway of a women's restroom in the Trustmark building in downtown Jackson. She alleges that the threshold is an unreasonably dangerous condition. The circuit court granted summary judgment in favor of Trustmark, and Martin appealed. The threshold is not a dangerous condition. Therefore, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.    On December 21, 2015, Wilda Ann Martin and her daughter, Kim Neyland, went Christmas shopping. When they finished shopping, Martin drove Neyland to downtown

Jackson to meet Neyland's husband, who worked at a law firm downtown. Because it was raining, Martin and Neyland decided to park in the covered customer parking adjacent to the Trustmark building, though they did not have any business at the bank. Martin and Neyland then entered the building.

¶3.     Neyland had worked in the Trustmark building several years earlier, and there had been a restroom on the first floor when she worked there. However, she testified that the door that led to the restroom had a sign on it that read "Health and Wellness" or "Trustwell." At her deposition, Neyland was shown a photograph of the door with a sign that stated "Trustwell" and "Employees Only." Neyland testified that she did not "recall it saying 'Employees Only' at the time." She did not dispute that it did—she simply did not recall.

¶4.     Neyland testified that she entered the coffee shop in the lobby of the building and asked an employee, "Is there a restroom?" Neyland testified that the employee, Nigel Davis, answered, "Yes. Right through those doors." Davis testified that Neyland asked him, "Is that restroom still there?" According to Davis, he simply answered "yes" and then continued serving his customers. Davis testified that at times he had given visitors to the building "permission" to use the first-floor restroom as a "[c]ourtesy." However, Davis did not consider it a "public" restroom, and no one from Trustmark had ever specifically authorized him to allow customers to use it. Davis also did not know whether Trustmark or the coffee shop had any policies regarding public use of the restroom.

¶5.     Neyland and Martin went through the "Trustwell" door and walked down a hallway. The door to the women's restroom is at the end of that hallway on the left. Inside the door,

there is a short entranceway with a white vinyl tile floor. A second doorway (without a door) separates the entranceway's white vinyl tile floor from the blue tile floor of the restroom itself. There is a "threshold" in that doorway. A photograph of the threshold is attached as an appendix to this opinion. As the photo shows, the threshold is white, but a different shade than the vinyl tile. The threshold allegedly rises one and one-eighth of an inch from the adjacent tile floor. It is not an abrupt right angle but a "slanted" threshold.

¶6. Neyland crossed the threshold into the restroom. Walking behind Neyland, Martin allegedly tripped over the threshold. She fell and sustained serious injuries to her shoulder.

¶7. Martin sued Trustmark in Hinds County Circuit Court. In her complaint, she alleged that she fell because of a "defect in the floor" that was a dangerous condition. In her amended complaint, she alleged that "she tripped on a foreign object" that was a dangerous condition. In her deposition, Martin asserted that the threshold "should have been marked with another hazardous different color flooring." Martin later submitted a "preliminary report" from an architect opining that the threshold was a tripping hazard.

¶8. Trustmark moved for summary judgment on two grounds. Trustmark argued (1) that the threshold is not a dangerous condition and (2) that Martin was, at best, a licensee because she ventured into a part of the building that was not open to the public. The circuit court granted Trustmark's motion for summary judgment. Martin appealed.

## ANALYSIS

¶9. We review the grant or denial of summary judgment de novo, applying the same standards as the circuit court. *Clark v. Moore Mem'l United Methodist Church*, 538 So. 2d

3

760, 762 (Miss. 1989). The evidence is viewed in the light most favorable to the non-movant, *Davis v. Hoss*, 869 So. 2d 397, 401 (¶10) (Miss. 2004), but the non-movant "may not rest upon mere allegations or denials in the pleadings but must set forth specific facts showing that there are genuine issues for trial." *Pigg v. Express Hotel Partners LLC*, 991 So. 2d 1197, 1199 (¶4) (Miss. 2008) (quoting *Massey v. Tingle*, 867 So. 2d 235, 238 (¶6) (Miss. 2004)). The movant is entitled to summary judgment if there is no genuine issue of material fact. *Glover ex rel. Glover v. Jackson State Univ.*, 968 So. 2d 1267, 1275 (¶22) (Miss. 2007). Indeed, "the court *must* grant summary judgment unless . . . the record demonstrates the minimum quantum of evidence sufficient to justify a determination in favor of the [non-movant] by a reasonable juror." *Id.* at 1274 (¶19).

¶10. In a premises liability case, the business owner's duty to the injured party depends on the status of the injured party. *Double Quick Inc. v. Moore*, 73 So. 3d 1162, 1166 (¶12) (Miss. 2011). "The injured party should be classified as an invitee, licensee, or trespasser." *Id.* "A landowner owes the highest duty to an invitee." *Keith v. Peterson*, 922 So. 2d 4, 9 (¶10) (Miss. Ct. App. 2005). "[A]n *invitee* is a person who goes upon the premises of another in answer to the express or implied invitation of the owner or occupant for their mutual advantage." *Leffler v. Sharp*, 891 So. 2d 152, 156 (¶11) (Miss. 2004) (quoting *Corley v. Evans*, 835 So. 2d 30, 37 (¶21) (Miss. 2003)). "A *licensee* is one who enters upon the property of another for his own convenience, pleasure, or benefit pursuant to the license or implied permission of the owner . . . ." *Id.* "[A] *trespasser* is one who enters upon another's premises without license, invitation, or other right." *Id.* "An invitee who goes beyond the

4

bounds of his invitation loses the status of invitee and the rights which accompany that state." *Id.* at 157 (¶16) (quotation marks and ellipsis omitted). "If the circumstances surrounding a person's . . . presence upon property are in dispute, then the determination of which status a particular plaintiff holds can be a jury question." *Payne v. Rain Forest Nurseries Inc.*, 540 So. 2d 35, 37 (Miss. 1989) (quotation marks omitted).

¶11.    In this case, Martin argues that she was an invitee at the time of her injury, while Trustmark maintains that she was, at most, a licensee. However, even if we assume for the sake of argument that Martin was an invitee, Trustmark was entitled to summary judgment. Although a landowner owes the highest duty to an invitee, an invitee's premises liability claim still requires proof of a dangerous condition. *Griffin v. Grenada Youth League*, 230 So. 3d 1083, 1087-88 (¶¶17, 19-20) (Miss. Ct. App. 2017); *see also McCullar v. Boyd Tunica Inc.*, 50 So. 3d 1009, 1012 (¶13) (Miss. Ct. App. 2010) ("In every premises-liability case, the plaintiff must show that a dangerous condition exists."); *Stanley v. Boyd Tunica Inc.*, 29 So. 3d 95, 97-98 (¶10) (Miss. Ct. App. 2010) ("[A] property owner cannot be found liable for the plaintiff's injury where no dangerous condition exists." (quotation marks omitted)). "[R]egardless of the invitee's precise theory of premises liability, proof that her injury was caused by a 'dangerous condition' is an essential element of her claim." *Jones v. Wal-Mart Stores E. LP*, 187 So. 3d 1100, 1104 (¶12) (Miss. Ct. App. 2016). Because the threshold that Martin fell over was not a dangerous condition, we need not address the parties' arguments about Martin's status at the time of her fall.

¶12.    As this Court has held before, "[c]ommon architectural conditions [in] a building are

5

not considered unreasonably dangerous conditions." *Benson v. Rather*, 211 So. 3d 748, 754 (¶22) (Miss. Ct. App. 2016). In other words, "usual dangers that customers normally expect to encounter on a business's premises, such as *thresholds*, curbs, and steps, fail to constitute unreasonably dangerous conditions." *Id.* at 755 (¶23) (emphasis added); *accord Tate v. S. Jitney Jungle Co.*, 650 So. 2d 1347, 1351 (Miss. 1995).

¶13. In *Dickinson v. Vanderburg*, 141 So. 3d 455 (Miss. Ct. App. 2014), the plaintiff tripped and fell on a two-inch raised threshold at the entrance to the defendant's business. *Id.* at 458 (¶9). She alleged that the defendant "should have placed signs warning customers of the raised threshold or painted the elevated area a different color to draw attention." *Id.* However, the circuit court granted summary judgment in favor of the defendant, and this Court affirmed. *Id.* at 456-58 (¶¶2, 10). We held, as a matter of law, that the two-inch "raised threshold" was not an "unreasonably dangerous" condition because customers must expect to encounter such common architectural features in a place of business. *Id.* at 458 (¶10).

¶14. Similarly, in *Benson*, *supra*, the plaintiff tripped and fell "on a concrete lip jutting [about two and a half inches] from the threshold of a doorway between . . . two service bays" at a tire store. *Benson*, 211 So. 3d at 750, 754 (¶¶5, 19). The business owner admitted "that he had painted both the floor of the service bay and the concrete lip that Benson stumbled over the same shade of gray." *Id.* at 751 (¶6). Nonetheless, citing *Dickinson*, the circuit court granted summary judgment in favor of the defendant, and we affirmed. *Id.* at 754-55 (¶¶19, 22-24). We reaffirmed that "usual dangers that customers normally expect to

6

encounter on a business's premises, such as thresholds, curbs, and steps, [do not] constitute unreasonably dangerous conditions." *Id.* at 755 (¶23). "[U]ndamaged thresholds" are "common architectural features for buildings," not "unreasonably dangerous" conditions. *Id.* Therefore, we held, as a matter of law, that the two-and-a-half-inch raised threshold between the service bays—though painted the same color as the surrounding floor—was not an unreasonably dangerous condition. *Id.* at (¶24).

¶15.    As can be seen from the appendix to this opinion, this case also involves an ordinary threshold. It is not materially different from the thresholds in *Dickinson* and *Benson*. Indeed, the sloping threshold in this case is not as high as the thresholds at issue in those two cases. In addition, it is not significant that the vinyl tile of the entranceway and the threshold are both white. The threshold and the tile are different shades of white, and Martin admitted that she had no difficulty seeing the threshold after she fell. Moreover, in *Benson*, the threshold and the surrounding floor were all painted the "same shade of gray," *Benson*, 211 So. 3d at 751 (¶6), but this Court still held as a matter of law that the threshold was a common architectural feature, not a dangerous condition. *Id.* at 754-55 (¶¶22-24). Likewise, the threshold in this case is a common architectural feature that an invitee can expect to encounter,[1] not a dangerous condition. *Id.* Therefore, the circuit court properly granted Trustmark's motion for summary judgment.

---

[1] In her deposition, Martin asserted that the threshold was "in the middle of the floor," and on appeal she argues that its location rendered it an "unexpected" hazard. However, the threshold is not "in the middle of the floor." As can be seen from the photo in the appendix, it is between the short entranceway to the restroom and the restroom itself. Martin's own expert described it as the "threshold at the entrance to the lady's restroom."

¶16. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, TINDELL AND C. WILSON, JJ., CONCUR. McDONALD, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY McDONALD AND LAWRENCE, JJ. McCARTY, J., NOT PARTICIPATING.**

**WESTBROOKS, J., DISSENTING:**

¶17. The majority finds that even if Martin was found to be an invitee, the restroom threshold at issue was not a dangerous condition. Admittedly, much of Mississippi's premise liability case law rejects the notion of a threshold as a dangerous condition. *See, e.g.*, *McGovern v. Searborough*, 566 So. 2d 1225, 1228 (Miss. 1990) (court affirmed directed verdict in favor of defendant because raised threshold at doorway entering building from sidewalk was reasonably safe); *Dickinson v. Vanderburg*, 141 So. 3d 455, 458 (Miss. Ct. App. 2014) (court affirmed grant of summary judgment in favor of defendant where raised entryway threshold found not to be dangerous condition); *Benson v. Rather*, 211 So. 3d 748, 755 (¶24) (Miss Ct. App. 2016) (court held threshold not unreasonably dangerous feature and was common, usual and expected hazard for auto-mechanic service bay); *Trull v. Magnolia Hill*, LLC, 171 So. 3d 518, 521 (¶11) (Miss. Ct. App. 2014) (summary judgment affirmed where court found casino entrance threshold was not dangerous condition). The vast majority of these and other cases supporting the majority's position involve thresholds raised above the outdoor sidewalk and/or placed at the entry ways of businesses—deeming them "open . . . obvious," "reasonably safe," and in no "way different from thousands of like doorways." *McGovern*, 566 So. 2d. at 1228. However, none extend the blanket rule to

8

unexpected internal thresholds.

¶18.    The Court in *Fulton v. Robinson*, 664 So. 2d 170, 175 (Miss. 1995), held that "if an invitee is injured by an artificial/man-made condition on an adjacent or internal part of the business premises, then there is a jury question as to the openness and obviousness of the danger."   Here, the placement of the threshold is not necessarily "usual and [where] customers normally expect to encounter [it] on the business premises." *Tate v. S. Jitney Jungle Co.*, 650 So. 2d 1347, 1351 (Miss. 1995).  Martin testified that the threshold was positioned "in the middle of the floor," which, if true, renders it fundamentally different from the other threshold cases applying the rule articulated by *McGovern* and its progeny.  In the record, Wilda Ann Martin claims that although "paying attention," she did not notice, anticipate, or expect the one-and-one-eighth inch raised "unlevel flooring," positioned several paces "after you came through the doorway"—not at the entrance of the building or the restroom.

¶19.    Lastly, Martin's complaint and testimony indicate the threshold was similar in color and texture to that of the adjoining vinyl tile, making it difficult to notice.  By her account, "[i]t was not a different color to be noticed" before Martin tripped.  Kim Neyland described both the vinyl floor and threshold as "white" and "white color[ed]."  To counter Martin's assertion, Trustmark presented a photograph of the threshold during Martin's deposition; she was able to see the threshold clearly at that time but maintains that on the day of the accident she was paying attention and did not notice a contrast between the vinyl floor and threshold prior to her fall. Contradictions between Neyland's and Martin's description of the threshold,

Trustmark's description, and the photograph exhibit evince a genuine issue of material fact. A determination of the presence or absence of a dangerous condition, like that of Martin's status and Davis' authority, is better suited for a jury.

¶20. The current case presents with "significant complexity" as to the determinations of status, liability, authority, duty, and dangerous condition—all highly "contested and disputed" by the parties—and the Court generally should find the facts specially and state its conclusions of law thereon. *Tricon Metals & Servc. Inc. v. Topp*, 516 So. 2d 236, 239 (Miss. 1987). The circuit court's order here did not. Genuine issues of material fact exist as to (1) Martin's status at the time of the incident; (2) whether the Trustmark bathroom threshold is indeed a dangerous condition; (3) whether Davis granted Martin permission to enter the restroom; and (4) whether Davis had the authority to do so. Accordingly, I would reverse the grant of summary judgment and remand this case to the circuit court for further proceedings.

**McDONALD AND LAWRENCE, JJ., JOIN THIS OPINION.**

APPENDIX

